IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

KAYLA F.,[1]

          Plaintiff,

  v.

COMMISSIONER, SOCIAL
SECURITY ADMINISTRATION,

          Defendant.

No. 6:24-cv-692-YY

OPINION AND ORDER

YOU, Magistrate Judge.

    Plaintiff Kayla F. seeks judicial review of the Social Security Commissioner ("Commissioner")'s final decision denying her application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("SSA"). 42 U.S.C. §§ 401–33. This court has jurisdiction to review the Commissioner's decision pursuant to 42 U.S.C. § 405(g) and § 1383(c)(3). For the reasons set forth below, the Commissioner's decision is AFFIRMED and this case is DISMISSED.

**PROCEDURAL HISTORY**

    Plaintiff filed an application for SSI on February 18, 2020, alleging a disability onset date of July 31, 2012. Tr. 137. The Commissioner denied Plaintiff's claim initially, and on

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the nongovernmental party in this case.

1 – OPINION AND ORDER

reconsideration. Tr. 156-61. Plaintiff filed a written request for a hearing, and a hearing was held before Administrative Law Judge Mark Triplett in November, 2021. Tr. 73-108. In November 2021, the ALJ issued a decision denying Plaintiff's claim for benefits. Tr. 134-49. Plaintiff requested review of the hearing decision, and the Appeals Council remanded the matter to the ALJ. Tr. 238-40, 150-55. The ALJ held a remand hearing via telephone in August 2023. Tr. 35-72. On October 27, 2023, the ALJ issued a decision again finding Plaintiff not disabled. Tr. 12-34. The Appeals Council denied Plaintiff's request for review on February 22, 2024. Tr. 1-6. Thus, the ALJ's decision is the Commissioner's final decision and subject to review by this court. 42 U.S.C. § 405(g); 20 C.F.R. § 422.210.

## STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007). Substantial evidence is "more than a mere scintilla," and means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Biestek v. Berryhill*, 139 S. Ct. 1148, 1150 (2019) (internal quotation marks omitted). This court must weigh the evidence that supports and detracts from the ALJ's conclusion and " 'may not affirm simply by isolating a specific quantum of supporting evidence.' " *Garrison v. Colvin*, 759 F.3d 995, 1009–10 (9th Cir. 2014) (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007)). This court may not substitute its judgment for that of the Commissioner when the evidence can reasonably support either affirming or reversing the decision. *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007). Instead, where the evidence is susceptible to more than one rational interpretation, the Commissioner's decision must be upheld

if it is "supported by inferences reasonably drawn from the record." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (citation omitted); *see also Lingenfelter*, 504 F.3d at 1035.

## SEQUENTIAL ANALYSIS AND ALJ FINDINGS

Disability is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The ALJ engages in a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act. 20 C.F.R. § 404.1520; *Lounsburry v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006) (discussing *Tackett v. Apfel*, 180 F.3d 1094, 1098–99 (9th Cir. 1999)).

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since February 18, 2020, the application date. Tr. 18. At step two, the ALJ found Plaintiff had the following severe, medically determinable impairments: schizophrenia, personality disorder, anxiety disorder, and substance addiction of alcohol and drugs. Tr. 18. At step three, the ALJ found no impairment met or equaled the severity of any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. Tr. 18. The ALJ found Plaintiff's had the residual functional capacity ("RFC"):

> to perform a full range of work at all exertional levels but with the following nonexertional limitations: the claimant can never climb ladders, ropes, or scaffolds; can tolerate no exposure to workplace hazards such as unprotected heights and exposed, moving machinery; can perform simple, routine tasks consistent with a reasoning level of 1 or 2; can tolerate occasional contact with coworkers and supervisors, but no direct interaction with the general public; can perform tasks that can be completed on a solitary basis, but cannot engage in team-based or collaborative work; and requires regular work breaks at 2-hour intervals.

Tr. 20.

3 – OPINION AND ORDER

At step four, the ALJ determined that Plaintiff was unable to perform any past relevant work. Tr. 26. At step five, the ALJ found that considering Plaintiff's age, education, work experience, and residual functional capacity, jobs exist in significant numbers in the national economy that Plaintiff can perform, such as machine packager, hand packager, and cleaner II. Tr. 27-28. The ALJ therefore found Plaintiff not disabled. Tr. 28.

## DISCUSSION

Plaintiff argues that the ALJ erred by (1) improperly discounting her symptom testimony, (2) rejecting competent lay testimony without stating a germane reason, and (3) failing to properly evaluate the medical opinions of Jane Mossberg, M.D., and Mary Kay Jabs, CSWA.

**I.    Subjective Symptom Testimony**

When a claimant has medically documented impairments that could reasonably be expected to produce some degree of the symptoms alleged, and the record contains no affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of ... symptoms only by offering specific, clear and convincing reasons for doing so." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996) (citation omitted). A general assertion that the claimant is not credible is insufficient; the ALJ must "state which ... testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). The reasons proffered must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (internal citation omitted). The ALJ need not "perform a line-by-line exegesis of the claimant's testimony" or "draft dissertations when denying benefits." *Lambert v. Saul*, 980 F.3d 1266, 1277 (9th Cir. 2020). But Ninth Circuit law "plainly requires" that an ALJ do more than "offer[ ] non-specific conclusions that [the claimant's]

testimony [is] inconsistent with [certain evidence]." *Id.* (citations omitted). If the "ALJ's credibility finding is supported by substantial evidence in the record, [the court] may not engage in second-guessing." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (citation omitted).

In evaluating a claimant's subjective symptom testimony, an ALJ may consider whether it is consistent with objective medical evidence. 20 C.F.R. §§ 404.1529(c)(1)-(3), 416.929(c)(1)-(3); SSR 16-3p, *available at* 2017 WL 5180304, at *7-8. The lack of objective medical evidence may not form the sole basis for discounting a claimant's testimony. *Tammy S. v. Comm'r Soc. Sec. Admin.*, No. 6:17-cv-01562-HZ, 2018 WL 5924505, at *4 (D. Or. Nov. 10, 2018) (citing *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) ("[T]he Commissioner may not discredit [a] claimant's testimony as to the severity of symptoms merely because they are unsupported by objective medical evidence.")). However, "[w]hen objective medical evidence in the record is *inconsistent* with the claimant's subjective testimony, the ALJ may indeed weigh it as undercutting such testimony." *Smartt v. Kijakazi*, 53 F.4th 489, 498 (9th Cir. 2022) (emphasis in original).

Effective March 28, 2016, the Commissioner superseded Social Security Ruling ("SSR") 96-7p, governing the assessment of a claimant's "credibility," and replaced it with SSR 16-3p. *See* SSR 16-3p, *available at* 2016 WL 1119029. SSR 16-3p eliminates the reference to "credibility," clarifies that "subjective symptom evaluation is not an examination of an individual's character," and requires the ALJ to consider all the evidence in an individual's record when evaluating the intensity and persistence of objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Id.* at *4.

At the first administrative hearing, Plaintiff testified that she lived with her mother because she could not be alone. Tr. 81. She experienced auditory and visual hallucinations whenever she left the house. Tr. 93. If she stayed home, she experienced them only a couple of times a week. Tr. 93. She was unable to focus or concentrate when she experienced the hallucinations. Tr. 93.

Plaintiff had not possessed a driver's license in five or six years. Tr. 81. Her mother drove her wherever she needed to go. Tr. 82. It was difficult for plaintiff to ride in a car even as a passenger because voices in her head would tell her to open the door and jump out. Tr. 93.

A neighbor stayed with plaintiff when her mother had to go to work. Tr. 82. Plaintiff previously received disability benefits for agoraphobia and seizures. Tr. 87. She claimed she would be able to work again only if she could have a family member accompany her to work. Tr. 89. Plaintiff's anxiety and panic could cause seizures. Tr. 92. She was prescribed Ativan for seizures. Tr. 92. When asked if she was still having seizures when alone, plaintiff stated, "I haven't put myself alone to find out. I'm too scared." Tr. 92. Plaintiff's mental symptoms remained unchanged with or without alcohol or marijuana use. Tr. 96-97.

At the remand hearing, Plaintiff testified that she continued to live with her mother and son. Tr. 44. Her mother helped with her son all the time. Tr. 57. Plaintiff slept in the living room because she could not be alone in a bedroom due to panic. Tr. 44. She relied on her mother and two friends for transportation. Tr. 45.

Plaintiff worked at a homeless camp in 2022; she was supposed to observe from a desk and contact the police if something bad happened, but she was fired after a few months because her medications caused drowsiness, and she fell asleep on the job. Tr. 50, 52-53. She also had worked as a driver's helper for UPS; the driver would hand her packages, and she walked them

6 – OPINION AND ORDER

to the door. Tr. 51. The driver allowed her to take fewer packages at a time than she was supposed to deliver. Tr. 56. She could not have done the job without this accommodation due to fear. Tr. 56. Plaintiff's work attempts worsened her mental health symptoms. Tr. 59. She continued to leave home only when accompanied by someone she trusted. Tr. 55. Plaintiff described she had good and bad days. Tr. 57. Her seizures were stable with medication, but she still needed to be with another adult because her panic could come on so fast. Tr. 58-59.

In written testimony, Plaintiff reported that she experienced panic attacks when alone "that go into seizures." Tr. 349. She felt safe only when she was with someone she trusted. Tr. 349. She rarely went outside and needed her mother "or another trusted adult" to accompany her. Tr. 352. She could not go anywhere alone or be at home alone. Tr. 356.

In considering Plaintiff's testimony, the ALJ found Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms and did not identify evidence of malingering. Tr. 21. However, the ALJ concluded that Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the medical evidence and other evidence in the record. Tr. 21. Specifically, the ALJ found Plaintiff's symptom allegations conflicted with objective medical evidence in the record, her improvement with treatment, and her daily activities. Tr. 21-22.

### A.    *Objective Medical Evidence*

The ALJ is instructed to evaluate objective evidence in considering a claimant's symptom allegations. 20 C.F.R. § 416.929(c)(2) ("Objective medical evidence ... is a useful indicator to assist us in making reasonable conclusions about the intensity and persistence of your symptoms[.]"). "When objective medical evidence in the record is *inconsistent* with the claimant's subjective testimony, the ALJ may indeed weigh it as undercutting such testimony."

7 – OPINION AND ORDER

*Smartt*, 53 F.4th at 498 (emphasis in original); s*ee also Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003) (affirming the ALJ's credibility finding when the plaintiff's testimony of weight fluctuation was inconsistent with the medical record). A claimant's failure to report symptoms to providers is another valid basis to find a claimant's symptom allegations unreliable. *Greger v. Barnhart*, 464 F.3d 968, 972-73 (9th Cir. 2006).

The ALJ reasonably discounted aspects of Plaintiff's allegations of mental health impairments as inconsistent with the record. At the outset, the ALJ acknowledged Plaintiff's testimony that she could not work on a regular basis due to the effects of agoraphobia, schizophrenia, and seizures. Tr. 21. The ALJ discounted a few discrete aspects of this testimony that conflicted with the record, however. For example, the ALJ contrasted Plaintiff's allegations that she suffers from seizures when she has increased anxiety with medical evidence that she reported she had not had a seizure since starting Ativan and the medical record as a whole, which does not show any significant reports or complaints of seizures. Tr. 23 (citing Tr. 813, 858, 875, 913). The ALJ also noted medical records showed that Plaintiff was "well-appearing," with normal cognitive function and "much improved" auditory hallucinations. Tr. 22 (citing Tr. 570). The ALJ further relied on records showing Plaintiff was calm and "happy" upon examination with no sign of depression or anxiety. Tr. 22-23 (citing Tr. 570). Additionally, the ALJ observed that "a consultative psychologist examiner who evaluated [plaintiff] in 2018, noted that [her] report 'lacks credibility' and that she was suspected of malingering,"[2] Tr. 24 (citing Tr. 501-02). Finally, the ALJ noted that Plaintiff has not required emergency care for her mental impairments

---

[2] The ALJ cited a 2018 psychological assessment by Paula Belcher, Ph.D., who concluded that plaintiff's "report lacks credibility," and observed that plaintiff contradicted herself, seemed to exaggerate her problems, was melodramatic, and seemed attention seeking. Tr. 501-02. Dr. Belcher concluded that plaintiff "is suspected of malingering, or at least greatly exaggerating any difficulties." Tr. 501.

8 – OPINION AND ORDER

since resuming outpatient treatment and, within 12 months of the filing date, reported doing well with no pseudoseizures and mild, controllable hallucinations. *See e.g.*, Tr. 546, 567, 576, 635. Instead, the ALJ provided commonsense limitations in the RFC to reflect Plaintiff's limitations: "occasional contact with coworkers and supervisors, … no direct interaction with the general public, … tasks that can be completed on a solitary basis, but cannot engage in team-based or collaborative work; and … regular work breaks at 2-hour intervals." Tr. 20. It was reasonable for the ALJ to rely on these positive examples of mental functioning in the medical record to discount certain aspects of plaintiff's symptom testimony that conflicted with the RFC, and substantial evidence supported the ALJ's decision to do so.

### B.   Daily Activities

The ALJ also discounted Plaintiff's subjective symptom testimony because it was inconsistent with her daily activities. Tr. 20. Activities of daily living, including prior work history, can form the basis for an ALJ to discount a claimant's testimony in two ways: (1) as evidence a claimant can work if the activities "meet the threshold for transferable work skills," or (2) where the activities "contradict [a claimant's] testimony." *Orn v. Astrue,* 495 F.3d 625, 639 (9th Cir. 2007). The relevant regulations require an ALJ to consider a claimant's daily activities when evaluating subjective symptom statements. 20 C.F.R. §§ 404.1529(c)(3)(i), 416.929(c)(3)(i). The Ninth Circuit has even found such routine activities as playing video games, using public transportation, and preparing meals to undercut a claimant's testimony of disabling limitations. *Ahearn v. Saul*, 988 F.3d 1111, 1117 (9th Cir. 2021).

The ALJ reasonably concluded that several of Plaintiff's daily activities conflicted with her testimony about the extent to which mental health issues impact her ability to work. The ALJ juxtaposed Plaintiff's testimony about mental health limitations (Tr. 44-57) and an inability to do

"anything 'normal'" (Tr. 655) with evidence that she was babysitting, working as a UPS driver helper, camping, fishing, working on a volunteer project, and doing makeup tutorials on social media. Tr. 24 (citing Tr. 772, 778, 935, 972-43, 989-92). Although Plaintiff testified she would experience debilitating anxiety when trying to leave her home independently and could only maintain attention for 15 minutes at a time, the activities the ALJ cited conflict with such severe limitations and support the conclusion that Plaintiff could manage work as restricted by the RFC. Tr. 20, 24. The ALJ further noted that Plaintiff successfully worked two different jobs while experiencing the symptoms she described in her testimony, further supporting the conclusion that she was not as disabled as she alleged. Tr. 24. Moreover, in August and October 2020, Plaintiff reported working as a babysitter (Tr. 662, 674, 675) and in January 2021 was babysitting three children. Tr. 689. This was another clear and convincing reason for the ALJ to rely upon to discount Plaintiff's testimony about the extent of her mental health symptoms.

      C.      *Improvement with Treatment*

The ALJ provided a further clear and convincing reason to discount Plaintiff's symptom testimony because her symptoms improved with treatment. An ALJ may reject a claimant's symptom testimony if that testimony is contradicted by evidence in the medical record. *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008). If the record shows a claimant's symptoms have improved with treatment, that improvement is "an important indicator of the intensity and persistence of ... symptoms." 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); *Wellington v. Berryhill*, 878 F.3d 867, 876 (9th Cir. 2017) (noting "evidence of medical treatment successfully relieving symptoms can undermine a claim of disability"). Symptom improvement, however, must be weighed within the context of an "overall diagnostic picture." *Holohan v. Massanari*, 246 F.3d 1195, 1205 (9th Cir. 2001).

In contrast to Plaintiff's testimony of significant mental health problems (Tr. 44-55), the ALJ noted that the record showed treatment often successfully relieved her symptoms. Tr. 24. For example, only two weeks after an acute episode in December, 2019, Plaintiff reported doing well despite some residual symptoms. Tr. 576. By February 2020, Plaintiff was taking her prescribed medications and, although she continued to report some symptoms, she again said that she was doing well. Tr. 567. Since the filing date, Plaintiff's mental impairments have not required any emergency care. Nor is there any objective documentation of her alleged pseudoseizures since the filing date and, in August 2020, she reported that she had not experienced any seizures since being prescribed Ativan prior to the filing date (Tr. 546). By November 2020 (less than 12 months after the filing date), Plaintiff's residual hallucinations were "mild and under control." Tr. 635. In all, the ALJ cited substantial evidence that treatment improved Plaintiff's symptoms, undermining her allegations that mental health symptoms were totally disabling.

## II.   Lay Witness Evidence

Plaintiff also argues the ALJ erred by rejecting lay witness testimony without stating a germane reason for doing so. Pl. Br. 20-21. Judges in this district still require ALJs to state germane reasons for discounting lay witness testimony under the 2017 regulations. *See, e.g., Karen W., v. Commissioner.*, 2025 WL 654113, at *8 (D. Or. Feb. 28, 2025) (citing 82 Fed. Reg. 5844 (Jan. 18, 2017)).[3] Here, the ALJ rejected Plaintiff's mother's testimony about Plaintiff's

---

[3] The Court notes that this issue is currently under consideration in the Ninth Circuit. *See Hudnall v. Dudek*, 130 F.4th 668, 671 (9th Cir. March 7, 2025) (vacated and withdrawn, 2025 WL 1024393, at *1 (9th Cir. Apr. 7, 2025). Unless and until the Ninth Circuit provides contrary, binding guidance on the interpretation of the 2017 regulations, this Court will continue to require ALJs to state a germane reason for disregarding lay witness testimony. *Valentine*, 574 F.3d at 694.

11 – OPINION AND ORDER

lifelong impairments as inconsistent with Plaintiff's work history and objective medical evidence in the record. Tr. 24. The lay witness testimony largely mirrored Plaintiff's own allegations, and the substantial evidence supporting the ALJ's decision to discount Plaintiff's allegations applies to her mother's testimony with equal force. *Valentine v. Astrue*, 574 F.3d 685, 694 (9th Cir. 2009). Therefore the ALJ did not err in his analysis of the lay testimony.

### III. Medical Opinion Evidence

When evaluating medical opinion evidence for claims filed on or after March 27, 2017, ALJs must apply 20 C.F.R. § 404.1520c for Title II claims and 20 C.F.R. § 416.920c for Title XVI claims. Under these regulations, ALJs no longer "weigh" medical opinions, but rather determine which are most "persuasive." 20 C.F.R. §§ 404.1520c(a)-(b), 416.920c(a)-(b). To that end, controlling weight is no longer given to any medical opinion. *Revisions to Rules*, 82 Fed. Reg. at 5867-68; *see also* 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Instead, the Commissioner evaluates the persuasiveness of medical opinions based on (1) supportability, (2) consistency, (3) relationship with the claimant, (4) specialization, and (5) other factors, such as "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements." 20 C.F.R. §§ 404.1520c(a), (c)(1)-(5), 416.920c(a), (c)(1)-(5).

"Supportability" and "consistency" are "the most important factors" in the evaluation process. 20 C.F.R. §§ 404.1520c(c), 416.920c(c). Supportability means the extent to which a medical source supports the medical opinion by explaining the "relevant . . . objective medical evidence." *Woods v. Kijakazi*, 32 F.4th 785, 791–92 (9th Cir. 2022) (citing 20 C.F.R. § 404.1520c(c)(1)). Consistency means the extent to which a medical opinion is "consistent . . .

with the evidence from other medical sources and nonmedical sources in the claim." *Id.* (citing 20 C.F.R § 404.1520c(c)(2)).

An ALJ must articulate how persuasive the ALJ finds the medical opinions and explain how the ALJ considered the supportability and consistency factors. 20 C.F.R. §§ 404.1520c(a), (b), 416.920c(a), (b); *see Tyrone W. v. Saul*, No. 3:19-CV-01719-IM, 2020 WL 6363839, at *7 (D. Or. Oct. 28, 2020). "The ALJ may but is not required to explain how other factors were considered, as appropriate, including relationship with the claimant (length, purpose, and extent of treatment relationship; frequency of examination); whether there is an examining relationship; specialization; and other factors, such as familiarity with other evidence in the claim file or understanding of the Social Security disability program's policies and evidentiary requirements." *Linda F. v. Comm'r Soc. Sec. Admin.*, No. C20-5076-MAT, 2020 WL 6544628, at *2 (W.D. Wash. Nov. 6, 2020). However, ALJs are required to explain "how they considered other secondary medical factors [if] they find that two or more medical opinions about the same issue are equally supported and consistent with the record but not identical." *Tyrone W.*, 2020 WL 6363839, at *6 (citing 20 C.F.R. §§ 404.1520c(b)(2) and 404.1520c(b)(3)).

Furthermore, the court must continue to consider whether the ALJ's decision is supported by substantial evidence. *See Revisions to Rules*, 82 Fed. Reg. at 5852 ("Courts reviewing claims under our current rules have focused more on whether we sufficiently articulated the weight we gave treating source opinions, rather than on whether substantial evidence supports our final decision."); *see also* 42 U.S.C. § 405(g).

Plaintiff argues the ALJ erred by failing to adequately consider the supportability and consistency of the opinions of Jane Mossberg, M.D., and Mary Kay Jabs, CSWA. Pl. Br. 3-12.

As explained below, the ALJ correctly analyzed their opinions and supported his analysis with substantial evidence.

    A.  *Dr. Jane Mossberg, M.D.*

Plaintiff began treatment with Dr. Mossberg in September 2013. Tr. 611. Dr. Mossberg has provided multiple written statements regarding the severity and limiting effects of Plaintiff's mental disorders. First, in September 2020, Dr. Mossberg reported that she saw Plaintiff three or four times a year. Tr. 611. Plaintiff's diagnoses included schizoaffective disorder, generalized anxiety with panic attacks, asthma, migraines, and nicotine dependence. Tr. 611. Her symptoms included psychosis (hallucinations, bizarre behavior, lability, acting out, etc.), anxiety and panic, severe headaches, and dyspnea with wheezing. Tr. 611-12. Relevant clinical findings included abnormal psychiatric exam and wheezing. Tr. 612. Plaintiff had been prescribed several medications; the most successful were Vraylar, Seroquel, and Ativan. Tr. 612. Dr. Mossberg opined that Plaintiff could lift/carry fifty pounds occasionally and ten pounds frequently. Tr. 614. She would be off task at least 25% of a workday, and she would be absent more than four workdays per month due to psychiatric issues. Tr. 615.

Next, in April 2021, Dr. Mossberg assessed mild limitation in Plaintiff's ability to carry out simple instructions; moderate limitation in her ability to understand and remember simple instructions, make judgments on simple work-related decisions, respond appropriately to usual work situations and changes in a routine work setting, and interact appropriately with the public, supervisors, and coworkers; and marked limitation in her ability to understand, remember, and carry out complex instructions and make judgments on complex work-related decision decisions. Tr. 698-99. Dr. Mossberg based this assessment on Plaintiff's schizoaffective disorder and active hallucinations. Tr. 698-99. She noted that alcohol and/or substance abuse did not contribute to

14 – OPINION AND ORDER

the limitations assessed. Tr. 699. She did not believe that Plaintiff could manage benefits in her own best interest. Tr. 700. She opined that hallucinosis and emotional lability would cause Plaintiff to be off task. Tr. 700. She also opined that Plaintiff would be absent more than four workdays per month due to emotional decompensation and increase in hallucinations. Tr. 700-01.

Finally, in August 2023, Dr. Mossberg provided an updated statement in which she identified Plaintiff's current diagnoses as bipolar schizoaffective disorder, generalized anxiety disorder, nicotine dependence, mild COPD, restless legs, reflux esophagitis, and atopic dermatitis. Tr. 1006. Plaintiff's treatment included Seroquel, Vraylar, Lorazepam, ProAir inhaler, Pramipexole, Gabapentin, and Omeprazole. Tr. 1006. When asked if Plaintiff had either improved or worsened since her last opinion, Dr. Mossberg wrote, "[Plaintiff] has improved ~ 40% with improved mood, less anxiety, no outright psychotic episodes but still very anxious, labile, with more somatization symptoms. Limitations are still present & I do not feel she is capable of maintaining any type of work schedule or meaningful work." Tr. 1007.

The ALJ found Dr. Mossberg's opinions unpersuasive. Tr. 25. He rejected them as internally inconsistent, not well supported, and inconsistent with other persuasive medical opinions and the overall medical record. Tr. 25.

As an initial matter, the ALJ reasonably discounted Dr. Mossberg's opinion that Plaintiff was not "capable of maintaining any type of work schedule or meaningful work" (Tr. 1007) because this was not a "medical opinion." The relevant regulations define "medical opinion" as "a statement from a medical source about what you can still do despite your impairment(s)," including restrictions on physical and mental demands of work. 20 C.F.R. § 416.913 (a)(2).[4]

---

[4] Both parties—and the ALJ—cite the regulation applying to claims filed before March 27, 2017.

15 – OPINION AND ORDER

Medical opinions do not include, however, "statements that you are or are not…able to perform regular or continuing work." 20 C.F.R. § 416.920b(c)(3)(i) (describing "issues reserved to the Commissioner"). Dr. Mossberg's opinion that Plaintiff was "not capable of maintaining any type of work schedule or meaningful work" (Tr. 1007) is just such a statement, and "neither valuable nor persuasive." 20 C.F.R. § 416.920b(c). It was proper for the ALJ to disregard this part of Dr. Mossberg's opinion as irrelevant and reserved for the Commissioner under the applicable regulations.

      The ALJ also adequately discussed the strength of the record evidence underlying Dr. Mossberg's medical opinions in finding them unpersuasive. Tr. 25. The supportability factor requires ALJs to consider the persuasiveness of a medical opinion based on how "relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or his medical opinion." 20 C.F.R. § 404.1520c(c)(1). The ALJ first analyzed Dr. Mossberg's opinion that Plaintiff had physical limitations, such as limitations with lifting, and concluded they were not supported by her own treatment records. Tr. 25. It was reasonable for the ALJ to find this opinion unpersuasive, given none of Dr. Mossberg's treatment notes document Plaintiff's physical limitations. Tr. 612-14. Despite Dr. Mossberg's general citation to wheezing as one of the "patient's signs," nothing in her opinions ties that medical sign to the conclusion that Plaintiff had physical limitations, such as trouble lifting. Tr. 612-14. The ALJ also identified several "internal inconsistencies" in Dr. Mossberg's opinions that undermined their persuasiveness. Tr. 25. For example, the ALJ noted that Dr. Mossberg's evaluations showed improvement in Plaintiff's condition with medication management and individual therapy, which

---

Tr. 25, Pl. Br. 5, Resp. 6 (all citing 20 C.F.R. § 416.927(d)). Plaintiff filed her claim on February 18, 2020, however, so the new regulations apply. 20 C.F.R. § 416.913.

is at odds with the marked or extreme limitations in her opinions. *Compare, e.g.,* Tr. 635 *with* Tr. 1015-16. The ALJ further highlighted the inconsistency between Dr. Mossberg's statements that Plaintiff did not have a substance addiction disorder that contributed to her limitations and contrary evidence that she did. *See* Tr. 574-75 (treatment record by Dr. Mossberg noting Plaintiff had sought emergency room care for "alcohol problem/anxiety"), Tr. 724-25 (emergency department records describing Plaintiff as intoxicated and as a frequent drinker), Tr. 755 (diagnoses alcohol dependence and cannabis dependence). The ALJ reasonably found the lack of support and internal inconsistencies undermined Dr. Mossberg's assessment of extreme limitations. In doing so, the ALJ sufficiently considered the supportability of Dr. Mossberg's medical opinion when concluding it was poorly supported by explanation and objective medical evidence.

The ALJ also considered the inconsistency of Dr. Mossberg's limitations with the overall medical record.[5] The consistency factor requires the ALJ to assess the medical opinions' alignment with "evidence from other medical sources and nonmedical sources in the claim." 20 C.F.R. § 404.1520c(c)(2). The ALJ reasonably found several aspects of Dr. Mossberg's opinion inconsistent with the record, and therefore not fully persuasive. Tr. 25. For example, although Dr. Mossberg found that Plaintiff's mental health issues would keep her off task at least 25% of a workday and that she would be absent more than four workdays per month, the record showed

---

[5] Defendant also asks the Court to consider "the context for the ALJ's evaluation of the treatment providers' opinions," noting that the ALJ rejected Dr. Mossberg and Mary Kay Jabs' opinions after finding the state agency consultants' opinions persuasive. Resp. 4. If the ALJ had found Dr. Mossberg's or Jabs' opinion unpersuasive *because of* their inconsistency with the State agency providers' opinions, then it would be proper for the Court to consider whether substantial evidence supports such a conclusion. Because the ALJ did not rely on this basis in his written opinion, however, the Court does not consider it on review. *See, e.g., Connett v. Barnhart,* 340 F.3d 871, 874 (9th Cir.2003).

17 – OPINION AND ORDER

these psychiatric symptoms were not so severe and improved with treatment. Tr. 25. The ALJ found these aspects of Dr. Mossberg's opinion specifically contrasted with record evidence that Plaintiff's medication management, individual therapy, and reduced drug and alcohol abuse lessened her symptoms. Tr. 25 (citing Tr. 546, 567, 576, 635).[6] The ALJ also found Dr. Mossberg's conclusions that Plaintiff would be off-task or absent from work due to hallucinations and periodic exacerbations of mental health symptoms were likewise inconsistent with the medical record. Tr. 25 (citing Tr. 571, 773, 779, 788-92, 813, 819, 932, 943-44). Because the record did not support the inference that Plaintiff would have acute periods of significant symptoms, it was reasonable for the ALJ to find Dr. Mossberg's opinion that Plaintiff would miss such significant periods of work unpersuasive. *Id.* In sum, the ALJ adequately considered these objective findings, and reasonably concluded they were inconsistent with several of the limitations in Dr. Mossberg's opinion.

B. Mary Kay Jabs, CSWA

In October 2020, Mary Kay Jabs, CSWA, reported in a written statement that she had been treating Plaintiff since July 2020 and saw her weekly for individual therapy sessions. Tr. 616. Jabs reported that Plaintiff had multiple diagnoses, including posttraumatic stress disorder ("PTSD"), generalized anxiety disorder, agoraphobia with panic disorder, and paranoid schizophrenia. Tr. 617. Jabs wrote, "Client reports a high degree of panic and anxiety along with

---

[6] Plaintiff argues it was error for the ALJ not to consider the fact that limiting triggers (instead of an overall improvement in health) improved her symptoms. Pl. Br. 7-8. Plaintiff's arguments about the nature of her improvement with treatment are an effort to have this Court re-weigh the evidence, however, which is beyond the scope of review. *Ahearn v. Saul*, 988 F.3d 1111, 1115 (9th Cir. 2021) ("We may not reweigh the evidence or substitute our judgment for that of the ALJ."). Even when there are two reasonable interpretations—plaintiff's and the ALJ's—the ALJ's interpretation must prevail. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) ("Where evidence is susceptible to more than one rational interpretation, it is the [Commissioner's] conclusion that must be upheld.").

hearing voices that have interfered previously with her ability to work effectively." Tr. 617. When asked if anything would interfere with Plaintiff's ability to maintain full-time employment, Jabs responded, "Based on her symptoms reported and previous work experiences reported it appears the above scenario would interfere w[ith] gainful employment & she would require more accommodations." Tr. 617. Jabs reported that Plaintiff's limitations had been present since she began treating Plaintiff. Tr. 617. Additionally, in July 2021, Jabs opined that alcohol and/or substance abuse did not contribute to Plaintiff's limitations. Tr. 763.

The ALJ found Jabs' opinion unpersuasive. Tr. 26. As with Dr. Mossberg, the ALJ began by noting Jabs' opinion that Plaintiff's "scenario would interfere w[ith] gainful employment" was a statement on an issue reserved for the Commissioner. Tr. 26. Therefore, it was appropriate for the ALJ to give no weight to this conclusion. 20 C.F.R. § 416.920b(c)(3)(i).

The ALJ further determined Jabs' opinion was unpersuasive because it was poorly supported and inconsistent with the record. The ALJ considered both the supportability and consistency of Jabs' opinion and supported the decision to find her opinion unpersuasive with substantial evidence. ALJs must evaluate both the relevant objective medical evidence supporting medical opinions, and their consistency with evidence from other relevant sources. 20 C.F.R. §§ 404.1520c(c)(1-2); *Woods*, 32 F.4th at 787. Regarding supportability, the ALJ rejected Jabs' opinion as based largely on Plaintiff's self-reports, which the ALJ properly found overstated her limitations. Tr. 26; *see Tommasetti*, 533 F.3d at 1041 ("An ALJ may reject a [ ] physician's opinion if it is based to a large extent on a claimant's self-reports that have been properly discounted[.]"). The ALJ further reasoned that Jabs' opinion was inconsistent with Plaintiff's track record of improvement and the overall medical record, which conflicted with the significant limitations Jabs imposed in her opinion. Tr. 26. As described above, the ALJ cited

19 – OPINION AND ORDER

substantial evidence of Plaintiff's improvement with treatment from throughout the relevant period that undermines Jabs' opinion. Tr. 26. Ultimately, the ALJ supported the decision to find Jabs' opinion unpersuasive with substantial evidence because it was inconsistent with the record and poorly supported.

## CONCLUSION

For the reasons given above, the Commissioner's decision is affirmed and this case is dismissed.

IT IS SO ORDERED.

DATED: July 7, 2025

/s/ Youlee Yim You
Youlee Yim You
United States Magistrate Judge

20 – OPINION AND ORDER